UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBERT HORN and MARIAN HORN, )
 )
 Plaintiffs, )
 )
 v. ) No. 4:08CV1033 TIA
 )
 )
 )
ST. LOUIS COUNTY, et al., )
 )
 Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant St. Louis County's Motion for Summary Judgment (Docket No. 163). Plaintiffs filed a Brief and Memorandum to All Motions for Summary Judgment (Docket No. 180) and Defendant filed a Reply (Docket No. 184) thereto. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Motion for Summary Judgment will be granted.

On November 5, 2012, Plaintiffs Robert Horn and Marian Horn filed a forty-nine page Fourth Amended Complaint and Petition alleging violation of constitutional rights (Counts I), violation of statutory civil rights (Count II)[1], conspiracy to violate civil rights (Count IV), assault and battery (Counts V and VI), intentional infliction of emotional distress (Counts VII and VIII), and false imprisonment (Counts XVI)[2] stemming from the events on September 9, 2005 and July

---

[1] A review of the Fourth Amended Complaint shows no Count III set forth therein.

[2] A review of the Fourth Amended Complaint shows no Counts IX through XV set forth therein.

15, 2006 and adding a count against Scott Cox alleging conspiracy and slander.[3] Plaintiff Robert Horn alleges that Defendant police officers without probable cause pulled him out of his house, handcuffed him, and assaulted and arrested him. Plaintiff Robert Horn further alleges Defendants unlawfully arrested him without probable cause or a warrant and seized the firearms from his house. Next, he alleges false charges were entered in the Municipal Court of the County of St. Louis, Missouri against him for peace disturbance, resisting arrest, assault on a police officer, and interfering with a police officer. In the Second Cause of Action stemming from events on July 15, 2006, Plaintiff Robert Horn alleges violation of constitutional rights (Counts I), violation of statutory civil rights (Count II)[4], conspiracy to violate civil rights (Count IV), assault and battery (Counts V and VI), intentional infliction of emotional distress (Counts VII and VIII), and malicious abuse of process, false arrest, and false imprisonment (Counts XVI).[5] Plaintiff Robert Horn alleges Defendants Foppe, Most, Shelvy, Hoots, and Harrison entered his home without probable cause or a warrant and attacked him by tasering him four times and pepper spraying him once. Thereafter, Defendants handcuffed and assaulted him and seized his guns and firearms. Plaintiff Robert Horn further alleges that Defendants had him falsely charged with peace disturbance and resisting arrest and had him incarcerated at the police station on the false charges.

In the Third Cause of Action stemming from the events on July 15, 2006, Plaintiff Marian Horn alleges that Defendants Foppe, Most, Shelvy, Hoots, and Harrison approached her in the

---

[3]On February 14, 2013, Defendant Scott Cox was dismissed with prejudice.

[4]A review of the Fourth Amended Complaint shows no Count III set forth therein.

[5]A review of the Fourth Amended Complaint shows no Counts IX through XV set forth therein.

yard requesting permission to enter the house. After she refused to give permission, Defendants Shelvy, Hoots, and Most handcuffed Plaintiff and placed her in a hot police car for over fifteen minutes. Only after agreeing to grant permission to enter the house, she was released from the vehicle, and Defendants handcuffed, tasered, and pepper sprayed Defendant Robert Horn. After videotaping the scene, one of the Defendants removed the camcorder and the video tape and memory card and seized the camcorder and memory card without probable cause. Without probable cause, Marian Horn alleges that Defendants placed her under arrest for interfering with a police officer and thereafter she was found not guilty by a jury in the Municipal Court of St. Louis County on July 24, 2008.

> In relevant part, Marion Horn further alleged as follows:
>
> 17. Upon information and belief the County of St. Louis by County Officials and its County Council and County Executive, defendants herein, and St. Louis County Police Department has maintained a system of review of police conduct and police training which is so untimely and cursory as custom and practice to be ineffective and to permit and tolerate by its Police Officers and in the case of Defendant Officers as alleged herein caused or acquiesced in the unreasonable and excessive use of force, false imprisonment, unlawful detention and the activity....
>
> 18. The acts, omissions, systemic flaws, policies, and customs and practices caused Defendant Officers of the St. Louis County to believe that the excessive, unreasonable, unjustified and unlawful use of force, unlawful searches and seizures and unlawful intrusion into citizens homes and malicious, wrongful and fraudulent, prosecution under color of state law would not be aggressively, honestly, and properly investigated, with the foreseeable result that police officers are more likely to use excessive or unreasonable or unjustified or unlawful force, false ijmpresnment [*sic*], malicious prosecution, invading the right of privacy, destruction of evidence and property of citizens and unlawful restraint of exercise of constitutional rights by citizens such
> that it caused the injuries in such regard to Plaintiff in this case....

(ECF No. 124, Fourth Amend. Compl. at 36-37). Plaintiff Marion Horn alleges violation of

constitutional rights (Counts I), violation of statutory civil rights (Count II)[6], conspiracy to violate civil rights (Count IV), assault and battery (Counts V and VI), intentional infliction of emotional distress (Counts VII and VIII), and malicious abuse of process, false arrest, and false imprisonment (Counts XVI).[7]

In the Fourth Cause of Action, Plaintiff Robert Horn alleges a cause of action for slander and malicious prosecution against Defendants Haefeli and Cox. Plaintiff alleges that after he was arrested on September 9, 2005, Officer Haefeli placed a "hazard" designation on him for someone dangerous or mentally ill and falsely reported seeing him shoot a firearm. This false report resulted in Robert Horn being attacked, his home invaded, and his guns seized. In the Fifth Cause of Action, Plaintiff Robert Horn alleges causes of action for slander and malicious prosecution contending that on September 9, 2005, Defendant Scott Cox, brother of Defendant Ken Cox, called St. Louis County dispatch 911 and falsely reported seeing him shoot a firearm. This false report resulted in Robert Horn being attacked, his home invaded, and his guns seized. On February 14, 2013, Defendant Scott Cox was dismissed with prejudice.

The Defendants are St. Louis County, William Ostendorf, Robert Shelvy, Joshua Lawrence, Joseph Brandt, Jason Neuman, Sean Haefeli, Colin Foppe, Christopher Most, Jeffery Hoots, Timothy Harrison, Charlie Rodriguez, Eric Austermann, and Kenneth Cox, sued in both their individual and official capacities.

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary

---

[6] A review of the Fourth Amended Complaint shows no Count III set forth therein.

[7] A review of the Fourth Amended Complaint shows no Counts IX through XV set forth therein.

judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of the motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. "[T]he nonmovant must respond by submitting evidentiary materials that 'set out specific facts showing a genuine issue for trial.'" Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(e)(2)). The non-moving party may not rest upon her pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. Id., at 324. The nonmovant must "explain the legal significance of her factual allegations beyond the mere conclusory statements importing the appropriate terms of art." Quinn v. St. Louis Cnty., 653 F.3d 745, 752 (8th Cir. 2011).

In passing on a motion for summary judgment, the Court must review the facts in a light most favorable to the party opposing the motion, and give that party the benefit of any inference that logically can be drawn from those facts. Buller v.Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). At the summary judgment stage, the undersigned will not weigh the evidence and decide the truth of the matter, but rather the undersigned need only determine if there is a genuine issue of material fact for trial. Anderson, 477 U.S. at 249. Summary judgment is not appropriate unless all the evidence

points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998) (citations omitted); Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

Nonetheless, it is clear to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Sys., Inc. 348 F.3d 732, 733-34 (8th Cir. 2003). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." Kountze ex rel. v. Hitchcock Foundation v. Gaines, 2008 WL 2609197, at * 3 (8th Cir. 2008). "'Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Bass v. SBC Commc'ns, Inc., 418 F.3d 870, 872-73 (8th Cir. 2005) (quoting Anderson, 477 U.S. at 248). Thus, Plaintiff, even though the non-moving party for summary-judgment purposes, "must still 'present[] evidence

sufficiently supporting the disputed material facts [such] that a reasonable jury could return a verdict in [its] favor.'" Pope v. ESA Servs,, Inc., 406 F.3d 1001-1003-04 (8th Cir. 2005) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48.

At the outset, the undersigned notes that Plaintiffs have not offered any statement of material facts that are in dispute as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1). Local Rule 4.01(E) provides in relevant part: "The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." "Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense." Libel v. Adventure Lands of America, Inc., 482 F.3d 1028, 1032 (8th Cir. 2007) (internal quotation and citation omitted).

In response to Defendant St. Louis County's Statement of Uncontroverted Material Facts ("Statement of Facts"), Plaintiffs did not comply with the requirements of Local Rule 4.01(E). Instead of identifying the paragraphs of Defendant's Statement of Facts as to which Plaintiffs assert that a genuine dispute exists in accordance with Rule 4.01(E), Plaintiffs contend that if the Police Board controls the police department then the Board would have never promoted Cox from Captain to Colonel thereby ratifying the misconduct of Cox. Accordingly, Plaintiffs' failure to comply with Rule 56(c) and Local Rule 4.01(E) warrants the Court deeming admitted Defendant's Statement of Facts as uncontroverted by Plaintiffs. Turner v. Shinseki, 2010 WL 2555114, at *2

(E.D. Mo. June 22, 2010) (citing Deichmann v. Boeing Co., 36 F.Supp. 2d 1166, 1168 (E.D. Mo. 1999), aff'd, 232 F.3d 907 (8th Cir. 2000), cert. denied, 531 U.S. 877.

Nonetheless, Plaintiffs' failure to respond properly to the motion for summary judgment does not mean that summary judgment should be automatically granted in favor of Defendant. Even if the facts alleged by Defendant are not in dispute, those facts must still establish that Defendant is entitled to judgment as a matter of law. Vander v. Emerson, 2012 WL 15021, at *1 (W.D. Mo. Jan. 4, 2012).

**The Undisputed Evidence before the Court on the Motion**

Accordingly, the record establishes the following:

Defendants William Ostendorf, Robert Shelvy, Joshua Lawrence, Joseph Brandt, Jason Neuman, Sean Haefeli, Colin Foppe, Christopher Most, Jeffery Hoots, Timothy Harrison, Charlie Rodriguez, Eric Austermann, and Kenneth Cox were employees of St. Louis County, Missouri Police Department at the time of the alleged incidents in September 2005 and July 2006. (Defendant's Statement of Uncontroverted Material Facts ("SOF"), Docket No. 165 at ¶ 1). Before a police recruit can be employed as a St. Louis County Police officer, he or she must attend and graduate from a police academy, and pass the Peace Officers Standards & Training program ("POST") test. (SOF at ¶ 2). Defendants Lawrence, Brandt, Neuman, Foppe, Most, Hoots, Harrison, Rodriguez, Austermann, and Cox graduated from the St. Louis County & Municipal Police Academy ("Police Academy"). Defendants Ostendorf and Shelvy graduated from the Greater St. Louis Police Academy. (SOF at ¶ 4). Defendant Haefeli graduated from Eastern Missouri Police Academy. (SOF at ¶ 5). Defendant Lawrence had 840 hours in training and graduated in 2002. (SOF at ¶ 6). Defendant Brandt had 632 hours in training and graduated in

1981.  (SOF at ¶ 7).  Defendant Neuman had 840 hours in training and graduated in 2000.  (SOF at ¶ 8).  Defendant Foppe had 800 hours of training and graduated in 1995.  (SOF at ¶ 9).  Defendant Most had 840 hours of training and graduated in 2000.  (SOF at ¶ 10).  Defendant Hoots had 640 hours of training and graduated in 1993.  (SOF at ¶ 11).  Defendant Harrison had 840 hours of training and graduated in 1999.  (SOF at ¶ 12).  Defendant Rodriguez had 800 hours of training and graduated in 1996.  (SOF at ¶ 13).  Defendant Austermann had 840 hours of training and graduated in 1999.  (SOF at ¶ 14).  Defendant Cox had 632 hours of training and graduated in 1987.  (SOF at ¶ 15).  Defendant Ostendorf had 600 hours of training and graduated in 1979.  (SOF at ¶ 16).  Defendant Shelvy had 600 hours of training and graduated in 1971.  (SOF at ¶ 17).  Defendant Haefeli had 840 hours of training and graduated in 1999.  (SOF at ¶ 18).

The Police Academy curriculum includes on-the-job training, 41 hours of instruction on Constitutional law including the law regarding the detaining and arrest of individuals, and 82 hours of instruction on defensive tactics including the use of force.  (SOF at ¶¶ 20-22).  Greater St. Louis Police Academy included academic study and hands-on instruction.  (SOF at ¶ 23).  Eastern Missouri Police Academy included instruction on Constitutional law including the laws of detention, arrest, and search and seizure and instruction on the use of force and on the job training.  (SOF at ¶¶ 24-26).

Police Academy recruits are graded on their performance at the Police Academy and must receive a minimum average score of 70 in each block of instruction to graduate.  (SOF at ¶ 27).  Training at the Police Academy is done pursuant to the standards established by the POST, part of the Missouri Department of Public Safety.  (SOF at ¶ 28).

The Commission on Accreditation for Law Enforcement Agencies, Inc. ("CALEA") mandates certain standards of training offered at the Police Academy. (SOF at ¶ 29). All St. Louis County police officers must be licensed and certified by POST. (SOF at ¶ 30). St. Louis County requires that police officers receive sixteen hours of mandatory training each year when hired, and they can receive additional hours of training if they choose. (SOF at ¶ 31). This annual training includes the legal and technical aspects of law enforcement including Constitutional law and the use of force. (SOF at ¶ 32). In addition to the sixteen hours of annual training, POST certification requires that police officers have at least 48 hours of training every three years. (SOF at ¶33). General Orders 03-62 and 06-75 are St. Louis Country's policies regarding police department employees continuing education and training. (SOF at ¶ 76). St. Louis County police officers must maintain their POST certification and license to be employed by St. Louis County. (SOF at ¶ 34).

Defendant Brandt has received 1,238 hours of continuing education since being employed by St. Louis County. (SOF at ¶ 36). While being employed by St. Louis County Defendant Lawrence received 200 hours of continuing education. (SOF at ¶ 35). Defendants Neuman and Foppe have received 695 hours and 587 hours respectively while employed by St. Louis County. (SOF at ¶¶ 37-38). Defendants Most and Hoots have received 716 hours and 1,324 hours respectively since being employed by St. Louis County. (SOF at ¶¶ 39-40). Defendants Harrison and Rodriguez have received 510 hours and 690 hours respectively while employed by St. Louis County. (SOF at ¶¶ 41-42). Defendants Austermann and Cox have received 993 hours and 1,512 hours respectively while employed by St. Louis County. (SOF at ¶¶ 43-44). Defendants Ostendorf, Shelvy, and Haefeli have received 1,328 hours, 1,394 hours, and 654 hours respectively

while employed by St. Louis County. (SOF at ¶¶ 45-47).

The St. Louis County Police Board ("Police Board") is established by the St. Louis County Charter, Article IV, Section 4.270. (SOF at ¶ 48). Pursuant to Section 4.270, the Police Board is vested with authority to establish the policies of the St. Louis County Police Department. (SOF at ¶ 50). The Police Board oversees the operation of the St. Louis County Police Department and is the final policy maker for the St. Louis County Police Department. (SOF at ¶¶ 49, 51). The policies established by the Police Board govern the operation and conduct of the St. Louis County Police Department. (SOF at ¶ 52). The Police Board establishes the rules and regulations for the qualifications, conduct, and discipline of St. Louis County Police Department employees including police officers. (SOF at ¶ 53). The Police Board cannot delegate its policy-making authority for the St. Louis County Police Department and has never delegated its policy-making authority including delegation to police officers. (SOF at ¶¶ 54-55).

General Order 04-29 is the St. Louis County Police Department's policy regarding use of force and General Order 04-81 is the policy regarding investigative detentions, arrests, and search and seizure. (SOF at ¶¶ 56-57). The Board promulgates and establishes the Police Department's General Orders. (SOF at ¶ 58). The Police Board promulgated and established General Orders 04-81 and 04-29. (SOF at ¶ 59). If a police officer violated General Order 04-29 by using force beyond that allowed in the policy, the officer would be subjected to discipline as this is a serious charge. (SOF at ¶¶ 60-61). Violating General Order 04-81 by detaining, arresting, searching or seizing of a person without reasonable suspicion or probable cause pursuant to the policy subjects a police officer to discipline, and this is a serious charge. (SOF at ¶¶ 62-63). The Police Board's policy and practice to uphold and sometimes increase the discipline imposed on a police officer for

violating General Orders 04-81 and 04-29. (SOF at ¶ 64).

The Police Board has no knowledge of any inadequacy in the training or hiring process of St. Louis County police officers. (SOF at ¶¶ 65, 67). The Police Board has not made a conscious choice to not provide additional training to the police officers. (SOF at ¶ 66).

Citizen complaints alleging misconduct against St. Louis County police officers are investigated through the Bureau of Professional Standards. (SOF at ¶¶ 68-69). After an investigation is completed, the complaint is classified as either: (1) exonerating the officer; (2) an unfounded complaint; (3) not sustaining the complaint; or (4) sustaining the complaint. (SOF at ¶ 70). If the complaint is sustained, the police officer is disciplined. (SOF at ¶ 71). Discipline of police officers can range from a letter of reprimand to termination. (SOF at ¶ 72).

The St. Louis County's hiring process for police officers is governed by General Order 98-45, and this policy sets forth the selection criteria for police officers. (SOF at ¶ 73). The hiring criteria include requirements for citizenship, age, education, and work experience. (SOF at ¶ 74). Applicants must have no convictions, qualify for a Missouri peace officer's license, have a valid driver's license, be in good financial standing, and not have a history of alcohol or controlled substance abuse. (SOF at ¶ 74). The police officer candidates must also undergo a physical condition test, a written examination, an oral examination, a background investigation, a polygraph examination, a psychological examination, and complete several rounds of interviews before being hired. (SOF at ¶ 75). General Orders 03-62 and 06-75 are St. Louis County's policy regarding police department employee continuing education and training. (SOF at ¶ 76).

**II. Motion for Summary Judgment**

**A. Municipal Liability**

Plaintiffs contend that Defendant St. Louis County delegated policy-making authority to Defendant police officers.

"A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a custom or usage with the force of law.'" Ware v. Jackson Cnty., Mo., 150 F.3d 873, 880 (8th Cir. 1998) (quoting Monell v. Dep't of Soc. Serv., 436 U.S. 658, 691 (1978) (internal quotation marks omitted)). "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." Parrish v. Luckie, 963 F.2d 201, 204 (8th Cir. 1992). A plaintiff must establish (1) "a continuing, widespread, persistent pattern of unconstitutional misconduct" by the municipality's employees, (2) to which policymaking officials were deliberately indifferent or which policymaking officials tacitly authorized after notice to the officials of that misconduct, and (3) that custom of deliberate indifference or tacit authorization was a "moving force behind the constitutional violation." Thelma D. v. Bd. of Educ. of St. Louis, 934 F.2d 929, 932-33 (8th Cir. 1991) (quoting Jane Doe "A" v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990)). A city will be liable "only where a city's inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate training or supervision actually represents the city's 'policy.'" Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 392 (8th Cir. 2007). "Before a municipality can be held liable ... there must be an unconstitutional act by a municipal employee." Reasonover v. St. Louis County, Mo., 447 F.3d 569, 583 (8th Cir.

2006) (quotations omitted); see also Avalos v. City of Glenwood, 382 F.3d 792, 802 (8th Cir. 2004) ("For there to be section 1983 liability, 'there must first be a violation of the plaintiff's constitutional rights[.]'") (quoting Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001)).

The uncontroverted evidence shows that Defendant St. Louis County has not delegated policy-making authority to the employee police officers. Plaintiffs have not submitted any evidence beyond their unsubstantiated assertions showing a St. Louis County policy or custom that would subject St. Louis County to section 1983 liability or that St. Louis County has delegated policy-making authority to Defendant police officers. Likewise, Plaintiffs have produced insufficient evidence to raise a triable issue as to whether a final policymaker's actions subjected St. Louis County to section 1983 liability. See Russell v. Hennepin Cnty., 420 F.3d 841, 846 (8th Cir. 2005) (municipal officials who have final policymaking authority may, by their actions, subject government to § 1983 liability). It is also uncontroverted that Defendant St. Louis County has not delegated policy-making authority to the employee police officers.

### B. Inadequate Training

In order to prove a failure-to-train claim, a plaintiff must (1) establish that policymakers acted with deliberate indifference in failing to train employees; (2) identify a specific deficiency in the training program; and (3) establish that the deficiency is so "closely related to the ultimate injury" that it "actually caused the constitutional depravation. City of Canton v. Harris, 489 U.S. 378, 391 (1989). Inferences of adequate training and causation must be based on more than the mere fact that the alleged constitutional violation occurred in the first place. See id. at 392 ("[W]hile claims such as respondent's - alleging that the city's failure to provide training to

municipal employees resulted in the constitutional deprivation she suffered - are cognizable under § 1983, they can only yield liability against a municipality where the city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants."). Plaintiffs have not cited a deficiency in St. Louis County's training. The instant record contains no evidence that Defendant's training on investigative detentions, arrests, searches and seizures, and use of force was inadequate and that any alleged inadequacy caused Plaintiffs' alleged injury. The uncontroverted evidence is that there were established rules of conduct and procedures governing the police officers in conducting arrests, searches and seizures, and use of force. The Court finds that without such facts there is not a genuine issue for trial. Plaintiffs' mere allegations that St. Louis County failed to adequately train and supervise and hire the named police officers cannot defeat summary judgment. See Baum v. Helget Gas Prods., Inc., 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."); Reasonover v. St. Louis County, Mo., 447 F.3rd at 578 ("'Evidence, not contentions, avoids summary judgment.'") (quotation omitted)). Therefore, the Court finds that Defendant St. Louis County is entitled to summary judgment on Plaintiffs' §1983 failure to train and supervise and hire claims. Accordingly,

**IT IS HEREBY ORDERED** that Defendant St. Louis County's Motion for Summary Judgment (Docket No. 163) is GRANTED.

Dated this  5th  day of March, 2015.

                                                    /s/Terry I. Adelman
                                       UNITED STATES MAGISTRATE JUDGE